## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

### (Northern Division)

SUZANNE GREEN,

c/o Masood Law
100 Commerce Drive, Suite 304
Newark, DE 19713
(302) 722-5441
zuneera@masoodlaw.com

       Plaintiff,

   v.

**TIDALHEALTH PENINSULA REGIONAL**, its

affiliates, subsidiaries, and other related entities,

under any name by which they are known,

100 East Carroll Street
Salisbury, Maryland 21801
(Wicomico County)
c/o Jackson Lewis P.C.
2800 Quarry Lake Drive, Suite 200
Baltimore, MD 21209
(410) 415-2004
Larry.Seegull@jacksonlewis.com

  And

JOHN DOE CONSUMER REPORTING AGENCY,
[Address Unknown]

     Defendants.

Civil Action No. _____


**JURY TRIAL DEMANDED**

1

## COMPLAINT

NOW COMES Plaintiff Suzanne Green, by and through her undersigned counsel, brings this action against Defendants TidalHealth Peninsula Regional and John Doe Consumer Reporting Agency, and in support thereof alleges as follows:

## I. NATURE OF THE ACTION

1. This is a civil action for unlawful retaliation in violation of the False Claims Act, violations of the Fair Credit Reporting Act, and wrongful discharge arising from Defendant TidalHealth Peninsula Regional's termination of Plaintiff Suzanne Green in retaliation for her protected disclosures of financial and operational improprieties, and from the unlawful procurement and use of a consumer report containing a judicially expunged criminal record.

2. Ms. Green is an accomplished compliance and auditing professional who left a substantially higher-paying position, sold her home, and relocated her household - including her husband, a disabled United States military veteran - to accept employment with TidalHealth. Within months of her hire, Ms. Green performed precisely the work for which she was retained: she identified and internally reported significant financial improprieties and operational deficiencies within TidalHealth's organization.

3. Rather than address Ms. Green's disclosures, TidalHealth retaliated. It subjected her to heightened scrutiny, commissioned an unauthorized second background investigation that exceeded the scope of its own screening policy - or otherwise caused an unauthorized, targeted investigation into her background to be conducted - and then terminated her employment on the pretext of a criminal record that had been expunged by a court of competent jurisdiction - a record that does not legally exist and that TidalHealth was not

permitted to procure, consider, or act upon. TidalHealth failed to provide Ms. Green the notices required by federal law before taking that adverse action.

4. Ms. Green seeks claims under False Claims Act, 31 U.S.C. § 3730(h) (2018); the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (2018) and Maryland common law. She seeks compensatory damages, punitive damages, statutory damages, equitable relief, and attorneys' fees and costs.

## II. THE PARTIES

5. Plaintiff Suzanne Green is an adult individual and a resident of Millsboro, Sussex County, Delaware. At all times relevant to this Complaint, Ms. Green was employed by TidalHealth and performed her job duties at TidalHealth's facility in Salisbury, Maryland, commuting daily from her residence in Delaware to Maryland.

6. Defendant TidalHealth Peninsula Regional ("TidalHealth") is a healthcare organization organized under the laws of the State of Maryland, with its principal place of business located in Salisbury, Wicomico County, Maryland. At all relevant times, TidalHealth was Ms. Green's employer [, was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b) (2018), employing fifteen or more employees,] and was a "user" of consumer reports within the meaning of the Fair Credit Reporting Act, 15 U.S.C. § 1681b (2018).

7. Defendant John Doe Consumer Reporting Agency ("John Doe CRA") is an entity whose identity is presently unknown to Plaintiff and which, upon information and belief, is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f) (2018). Upon information and belief, TidalHealth retained John Doe CRA to prepare one or more consumer reports concerning Ms. Green. Plaintiff will identify John Doe CRA through discovery and will seek leave to amend this Complaint to substitute its true name.

3

## III. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the False Claims Act, 31 U.S.C. § 3730(h), and the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

9. This Court has supplemental jurisdiction over Plaintiff's state-law claim pursuant to 28 U.S.C. § 1367(a) because that claim is so related to the federal claims that it forms part of the same case or controversy under Article III of the United States Constitution.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) (2018) because Defendant TidalHealth resides in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including at TidalHealth's Salisbury, Maryland facility where Plaintiff was employed and from which she was terminated.

11. Assignment to the Northern Division is proper under Local Rule 501 because TidalHealth's principal place of business is located in Wicomico County, Maryland, which lies within the Northern Division pursuant to 28 U.S.C. § 100 (2018).

## IV. FACTUAL ALLEGATIONS

### A. Ms. Green's Recruitment and the Sacrifices She Made to Join TidalHealth

12. Ms. Green is a highly credentialed compliance and auditing professional with extensive experience in healthcare regulatory environments. She was employed by TidalHealth as its Senior Director of Practice Operations, where she was responsible for ensuring regulatory compliance including compliance with the Health Insurance Portability and Accountability Act ("HIPAA").

4

13. In the calendar year immediately preceding her employment with TidalHealth, Ms. Green earned wages of approximately $272,000 from her prior employer, reflecting her professional standing and market value.

14. In or around the Fall of 2025, TidalHealth recruited Ms. Green to serve in an auditing and compliance role at its Salisbury, Maryland facility. Ms. Green accepted TidalHealth's written offer of employment, which provided for an annual base salary of $165,000; a variable compensation plan equal to fifteen percent (15%) of base salary, payable after the close of the fiscal year; and eligibility to participate in TidalHealth's 403(b) and 457(b) retirement plans.

15. In reliance on TidalHealth's offer and her reasonable expectation of continued employment, Ms. Green made substantial, irreversible personal and financial commitments. She and her husband - a disabled United States military veteran for whom Ms. Green is the sole financial provider - listed and ultimately sold their primary residence in Florida and relocated to Millsboro, Delaware.

16. Because TidalHealth required Ms. Green to begin work on December 1, 2025, before her Florida residence had sold, Ms. Green was compelled to carry the costs of both her Florida mortgage and her new Delaware residence simultaneously for approximately three and one-half months, until the Florida home sold on or about March 19, 2026. Ms. Green incurred substantial relocation expenses and real estate transaction costs as a direct consequence of accepting employment with TidalHealth.

17. Ms. Green commenced employment with TidalHealth on December 1, 2025, and reported to and performed her duties at TidalHealth's Salisbury, Maryland facility, commuting daily from her Delaware residence.

5

18. Prior to Ms. Green's hire, TidalHealth conducted a pre-employment background investigation of Ms. Green consistent with its standard screening policy, which provides for a ten-year lookback period. That investigation returned results satisfactory to TidalHealth, and TidalHealth hired Ms. Green.

## B. Ms. Green's Protected Disclosures

19. Shortly after commencing employment, Ms. Green, in the ordinary course of her auditing and compliance duties, identified and documented significant financial improprieties and related operational deficiencies within TidalHealth's organization.

20. Ms. Green reasonably believed that the conduct she identified evidenced violations of law and regulation governing TidalHealth's operations, including federal healthcare and financial compliance requirements.

21. Ms. Green fulfilled her professional and legal obligations by internally reporting her findings to supervisory and executive personnel within TidalHealth who possessed authority to investigate and act upon such disclosures.

22. The financial improprieties and operational deficiencies Ms. Green identified included arrangements and practices that she reasonably believed violated the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) (2018), and the federal physician self-referral law (the "Stark Law"), 42 U.S.C. § 1395nn (2018), including physician compensation arrangements within the Neurology and Neurosurgery service lines that Ms. Green questioned as potentially exceeding fair market value, and the retention of highly compensated physicians whom Ms. Green questioned as being retained for reasons other than the clinical services actually provided, including to maintain the hospital's trauma center designation.

6

23. TidalHealth submits claims for payment to federally funded healthcare programs, including Medicare and Medicaid. Claims for items or services resulting from a violation of the Anti-Kickback Statute constitute false or fraudulent claims for purposes of the False Claims Act, 31 U.S.C. §§ 3729–3733 (2018); *see* 42 U.S.C. § 1320a-7b(g)(2018). Claims arising from referrals prohibited by the Stark Law are likewise not properly payable by federal healthcare programs.

24. Ms. Green, as part of her role, conducted an audit of provider schedules and compared actual patient care hours to contractual expectations.

25. The standard office hours were 8:00 a.m. to 5:00 p.m. Under TidalHealth's scheduling practice, providers were expected to see patients from approximately 8:00 a.m. to 12:00 p.m. and 1:00 p.m. to 4:30 p.m., with administrative time built into their schedules.

26. Provider contracts generally required either a 36/4 model or a 34/6 model, meaning providers were expected to perform 34–36 hours of face-to-face patient care each week with four to six (4–6) hours of administrative time.

27. Ms. Green's audit revealed that approximately eighty-five to ninety percent (85–90%) of providers were only working twenty-four (24) to twenty-eight (28) patient care hours per week, significantly below their contractual obligations.

28. Furthermore, and in many cases, providers blocked their schedules so that patient appointments did not begin until 9:00 a.m. and ended as early as 3:30 p.m., substantially reducing patient access and organizational revenue.

29. Ms. Green, in her official capacity, also initiated an audit of provider time off beginning in 2025.

30. Ms. Green's audit revealed that providers were taking half-days, full days, and even extended periods away from work without properly recording their leave in the payroll system. As a result, paid time off was not deducted from their PTO banks while they continued receiving their regular compensation.

31. Additionally, at the end of 2025, providers and employees who were absent from work received additional PTO payouts in situations where leave had not been properly recorded.

32. These findings also included members of management, many of whom expressed dissatisfaction that their time records were being reviewed and audited.

33. As if that wasn't enough, Ms. Green's audit also revealed that certain neurologists and neurosurgeons were earning compensation in excess of eight hundred and fifty thousand dollars ($850,000) annually while averaging approximately fifteen (15) hours of patient care per week.

34. When these concerns were reported, Ms. Green was informed that leadership wanted to preserve the service line despite the financial impact. During discussions regarding these findings, Vice President of Finance Jim Kanuck commented that there appeared to be "Stark issues" associated with the arrangement. Although Mr. Kanuck is publicly identified as TidalHealth's Vice President of Finance, at the relevant time he was serving as Vice President of Finance for TidalHealth Medical Partners, tasked with "righting the ship." After joining TidalHealth from Atlantic General following the early March 2026 merger, he was responsible for reviewing Medical Partners' revenue, expenses, provider contracts, and productivity.

35. Ms. Green reasonably believed that the arrangements and practices she identified had resulted in, or would result in, the submission of false or fraudulent claims to federal healthcare programs, fraudulently maintaining the hospital's trauma center designation, and she undertook efforts to stop those violations, including by investigating, documenting, and internally reporting them.

36. On or about February 2026, Ms. Green reported her findings and concerns to members of TidalHealth's directors and executive leadership, including Tres Pelot, Cindy Lunsford, Joel Bullock, Jennifer Ketterman, Paul Sonder and others. Ms. Green further advised leadership that TidalHealth's Human Resources function should be involved in addressing the matters she had identified.

37. Rather than investigate or address Ms. Green's disclosures, on or about March 12, 2026, Tres Pelot, TidalHealth's Chief Administrative Officer, explicitly directed Ms. Green to stop looking into the matters she had raised.

38. On Friday, March 20, 2026, Ms. Green attended a 9:00 a.m. leadership meeting that became extremely heated. Cindy Lunsford announced organizational changes that would cause Practice Directors to report to Ms. Green while Directors Joel Bullock, Jennifer Ketterman, Paul Sonder would assume more strategic responsibilities. Directors Joel Bullock, Jennifer Ketterman, Paul Sonder strongly opposed these changes.

39. Ms. Green thereafter began receiving hostile and negative treatment from Directors Joel Bullock, Jennifer Ketterman, Paul Sonder at every turn.

40. As a result of the hostile treatment imposed on her, Ms. Green sent emails up until termination addressing these issues and concerns.

41. On Monday, March 23, 2026, Tres Pelot told Ms. Green that Cindy Lunsford wanted to meet with both of them regarding a meeting agenda. They went together to Cindy Lunsford's office. No Human Resources representative was present.

42. Once they were seated, Cindy opened a file that contained an outdated and obscure TCPalm news article referencing Ms. Green's expunged record. Ms. Green was then grilled by Cindy Lunsford about the contents of the article to which Ms. Green profusely iterated, "You did a background check on me. I passed my background check."

43. Approximately one week later, on Friday, March 27, 2026, Tres Pelot again told Ms. Green that Cindy Lunsford wanted to meet with them regarding an agenda. No Human Resources representative was present or referenced during the meeting.

44. In the meeting, Cindy Lunsford again questioned Ms. Green about her criminal history. Ms. Green again reiterated, "You did a background check on me. I passed my background check."

45. Cindy Lunsford then produced a severance agreement for Ms. Green to sign that referenced "operational issues." After Ms. Green was let go, Tres Pelot stated to Ms. Green in the elevator, "For what it's worth, you did a great job, too good a job."

46. Clearly, within days of Ms. Green's disclosures and the Chief Administrative Officer directive immediately following an intervening weekend - Ms. Green was summoned to a meeting and confronted regarding the judicially expunged matter, and was thereafter terminated.

47. Ms. Green's internal reports constituted protected activity under the False Claims Act, 31 U.S.C. § 3730(h) (2018).

## C. TidalHealth's Retaliation and the Unauthorized Investigation into Ms. Green's Background

48. Following Ms. Green's protected disclosures, TidalHealth's treatment of her changed materially and for the worse. Ms. Green was subjected to heightened and unwarranted scrutiny of her work and conduct.

49. Upon information and belief, in or about early 2026, and without legitimate business justification, TidalHealth caused a second background investigation of Ms. Green to be conducted by John Doe CRA. This second investigation exceeded the ten-year lookback period provided by TidalHealth's own background screening policy.

50. TidalHealth did not obtain Ms. Green's authorization for this second, expanded background investigation, and the investigation exceeded the scope of any authorization Ms. Green had previously provided. TidalHealth lacked a permissible purpose for procuring this consumer report within the meaning of 15 U.S.C. § 1681b (2018)

51. The consumer report that John Doe CRA prepared and furnished to TidalHealth included reference to a criminal matter from Ms. Green's past that had been expunged by a court of competent jurisdiction.

52. In the alternative, and upon information and belief, to the extent TidalHealth contends that no consumer reporting agency was involved and that the expunged matter was located through internet searches conducted by TidalHealth personnel or agents, such searches were conducted using one or more third-party websites, data brokers, people-search services, or information aggregators that assemble or evaluate information on consumers for the purpose of furnishing it to third parties, and that accordingly constitute consumer reporting agencies within the meaning of 15 U.S.C. § 1681a(f)

(2018). The identity of the source or sources from which the expunged matter was obtained, and the manner in which it was located, are facts exclusively within Defendants' possession and will be established in discovery.

53. Under applicable law, an expunged record is treated as if it never occurred. An expunged record is not a lawful basis for an adverse employment action and is not properly the subject of a consumer report prepared for employment purposes. See Md. Code Ann., Crim. Proc. § 10-109 (2025).

54. Upon information and belief, John Doe CRA failed to follow reasonable procedures to assure the maximum possible accuracy of the information in the consumer report it furnished concerning Ms. Green, and failed to maintain strict procedures to ensure that public record information reported for employment purposes was complete and up to date, in that it reported a judicially expunged record as though it remained valid and current.

**D. Ms. Green's Termination and TidalHealth's Failure to Provide Required Notices**

55. On or about March 31, 2026 - approximately four months after Ms. Green commenced employment, and within days of her protected disclosures and the Chief Administrative Officer's directive that she stop looking into the matters she had raised - TidalHealth terminated Ms. Green's employment, relying upon the expunged record surfaced by the unauthorized second background investigation or targeted search as the purported basis for her termination.

56. Before taking adverse action against Ms. Green based on the consumer report, TidalHealth failed to provide Ms. Green with a copy of the consumer report and a written description of her rights under the Fair Credit Reporting Act, as required by 15

U.S.C. §§ 1681b(b)(3), 1681m(a) (2018) Ms. Green was therefore deprived of any opportunity to review the report, identify the expunged record, and dispute its inclusion before she was terminated.

57. TidalHealth likewise failed to provide Ms. Green the post-adverse-action notice required by 15 U.S.C. § 1681m(a) (2018).

58. Notwithstanding the purported reliance on a background-check result, TidalHealth's own separation documentation characterized Ms. Green's termination as an "involuntary separation due to operational issues." This characterization is irreconcilable with a termination genuinely premised on a character-based or background-based concern, and is evidence that the stated basis for the termination was pretextual.

59. The close temporal proximity between Ms. Green's protected disclosures, the Chief Administrative Officer directive that she stop looking into the matters she had raised, TidalHealth's decision to cause an unauthorized investigation into her background, and Ms. Green's termination supports an inference that TidalHealth's true motivation was retaliation for Ms. Green's protected activity.

### E. The Consequences of TidalHealth's Conduct

60. TidalHealth terminated Ms. Green's employer-sponsored health insurance coverage effective the date of her termination. Although TidalHealth subsequently provided notice of continuation coverage under COBRA, the cost of that coverage was prohibitive for Ms. Green, who had just lost her income.

61. Seven days after her termination, on or about April 7, 2026, Ms. Green suffered a cardiac event. Ms. Green had no prior history of cardiac illness and no prior history of

anxiety. Because TidalHealth had terminated her health coverage, which led her to incur upwards of $40,000 in medical expenses for the treatment of this cardiac event without the benefit of insurance coverage.

62. As a direct and proximate result of TidalHealth's conduct, Ms. Green has suffered and continues to suffer substantial damages, including but not limited to lost wages and benefits; loss of future earning capacity; relocation and housing costs; uninsured and ongoing medical expenses; emotional distress, anxiety, and physical harm; and damage to her professional reputation.

## V. CLAIMS FOR RELIEF

### COUNT I

### Retaliation in Violation of the False Claims Act

### (31 U.S.C. § 3730(h)) – Against TidalHealth

63. Plaintiff incorporates by reference paragraphs 1 through 62 as though fully set forth herein.

64. The False Claims Act provides that an employee shall be entitled to all relief necessary to make that employee whole if the employee is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee in furtherance of an action under the False Claims Act or other efforts to stop one or more violations of the False Claims Act, 31 U.S.C. § 3730(h)(1) (2018).

65. Ms. Green engaged in protected activity within the meaning of § 3730(h) when, in the course of her compliance and auditing duties, she identified, investigated, documented, and internally reported to TidalHealth's Chief Financial Officer and other members of

14

executive leadership arrangements and practices she reasonably believed violated the Anti-Kickback Statute and the Stark Law and to have resulted in, or to be likely to result in, the submission of false or fraudulent claims to federal healthcare programs, and when she advised that Human Resources should be involved in addressing those matters. Ms. Green's internal reports and continued inquiry constituted lawful efforts to stop one or more violations of the False Claims Act.

66. TidalHealth had knowledge of Ms. Green's protected activity. Her reports were made directly to TidalHealth's Chief Financial Officer and other executive leadership, and the Chief Administrative Officer responded by explicitly directing her to stop looking into the matters she had raised.

67. Because of Ms. Green's protected activity, TidalHealth discriminated against her in the terms and conditions of her employment, including by subjecting her to heightened scrutiny, causing a search into her background and history to be conducted without legitimate business justification, confronting her with a judicially expunged matter, and terminating her employment.

68. A causal connection exists between Ms. Green's protected activity and TidalHealth's adverse actions, as evidenced by, among other things: (a) the close temporal proximity - a matter of days - between her disclosures, the Chief Administrative Officer's directive that she stop looking into the matters she had raised, and her termination; (b) the absence of any legitimate explanation for the post-hire search into her background, the origin, purpose, and authorship of which TidalHealth has been unable to explain; (c) TidalHealth's shifting and inconsistent justifications for her termination; and (d) TidalHealth's own separation documentation, which characterized the termination as

an "involuntary separation due to operational issues," a characterization irreconcilable with the purported background-based justification.

69. As a direct and proximate result of TidalHealth's retaliation, Ms. Green has suffered damages, including lost wages and benefits, loss of future earning capacity, uninsured medical expenses, emotional distress and physical harm, and reputational injury.

70. Pursuant to 31 U.S.C. § 3730(h)(2) (2018), Ms. Green is entitled to all relief necessary to make her whole, including, but not limited to, reinstatement with the same seniority status she would have had but for the discrimination, two times the amount of back pay, interest on the back pay, and compensation for special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees.

## COUNT II

### Violation of the Fair Credit Reporting Act

### (15 U.S.C. §§ 1681b, 1681m) – Against TidalHealth

71. Plaintiff incorporates by reference paragraphs 1 through 70 as though fully set forth herein.

72. The Fair Credit Reporting Act regulates the procurement and use of consumer reports for employment purposes.

73. TidalHealth procured a consumer report concerning Ms. Green without a permissible purpose and in excess of the scope of any authorization Ms. Green had provided, in violation of 15 U.S.C. § 1681b.

74. TidalHealth used a consumer report to take adverse employment action against Ms. Green without first providing her a copy of the report and a written description of her rights under the FCRA, in violation of 15 U.S.C. §§ 1681b(b)(3), 1681m(a) (2018)

16

75. TidalHealth further failed to provide Ms. Green the post-adverse-action notice required by 15 U.S.C. § 1681m(a) (2018).

76. TidalHealth's violations of the FCRA were willful, entitling Ms. Green to statutory and punitive damages under 15 U.S.C. § 1681n. In the alternative, TidalHealth's violations were negligent, entitling Ms. Green to actual damages under 15 U.S.C. § 1681o (2018).

77. Ms. Green is entitled to recover actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs as provided by 15 U.S.C. §§ 1681n, 1681o (2018).

## COUNT III

### Violation of the Fair Credit Reporting Act

### (15 U.S.C. §§ 1681e(b), 1681k) – Against John Doe CRA

78. Plaintiff incorporates by reference paragraphs 1 through 77 as though fully set forth herein.

79. As a consumer reporting agency, John Doe CRA was required to follow reasonable procedures to assure maximum possible accuracy of the information concerning Ms. Green in the consumer reports it prepared, pursuant to 15 U.S.C. § 1681e(b) (2018).

80. John Doe CRA was further required, when furnishing a consumer report for employment purposes containing public record information likely to have an adverse effect on the consumer, to maintain strict procedures to ensure that such information was complete and up to date, pursuant to 15 U.S.C. § 1681k (2018).

81. John Doe CRA violated 15 U.S.C. §§ 1681e(b), 1681k (2018) by reporting a judicially expunged criminal record concerning Ms. Green as though it remained valid and current.

82. John Doe CRA's violations were willful, entitling Ms. Green to statutory and punitive damages under 115 U.S.C. § 1681n (2018). In the alternative, the violations were negligent, entitling Ms. Green to actual damages under 15 U.S.C. § 1681o (2018).

83. Ms. Green is entitled to recover actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs as provided by 15 U.S.C. §§ 1681n, 1681o (2018).

## COUNT IV

## Wrongful Discharge in Violation of Maryland Public Policy

## (Maryland Common Law) – Against TidalHealth (Pleaded in the Alternative)

84. Plaintiff incorporates by reference paragraphs 1 through 83 as though fully set forth herein.

85. This claim is pleaded in the alternative to Plaintiff's statutory claims. Maryland recognizes a cause of action for wrongful discharge where an at-will employee is terminated in contravention of a clear mandate of public policy. To prevail, a plaintiff must establish that she was discharged, that the basis for the discharge violates a clear mandate of public policy, and that a nexus exists between the conduct and the termination.

86. Maryland has a clear mandate of public policy, reflected in statute and judicial decision, including MD Code Ann., Crim. Proc. § 10-109 (LexisNexis 2018), that judicially expunged records be treated as legally nonexistent and not be used as the basis for adverse action against an individual. The use of an expunged record to terminate employment contravenes this clear mandate of public policy.

18

87. TidalHealth discharged Ms. Green in violation of this clear mandate of public policy by terminating her on the basis of a judicially expunged record.

88. A direct nexus exists between TidalHealth's violation of public policy and its decision to terminate Ms. Green.

89. As a direct and proximate result of TidalHealth's wrongful discharge of Ms. Green, she has suffered damages, including lost wages and benefits, emotional distress, and other harm, in amounts to be proven at trial.

## VI. RESERVATION OF RIGHTS

90. Plaintiff reserves the right to amend this Complaint, including to substitute the true name and identity of Defendant John Doe Consumer Reporting Agency once ascertained through discovery;

91. Add additional claims or parties as warranted by facts revealed in discovery; and

92. Assert any additional claims arising from the same operative facts upon the exhaustion of any applicable administrative remedies, including the resolution of any charge pending before the Equal Employment Opportunity Commission. Nothing in this Complaint shall be construed as a waiver of any claim, right, or remedy available to Plaintiff at law or in equity.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Suzanne Green respectfully requests that this Honorable Court enter judgment in her favor and against Defendants and award the following relief:

a. Entry of judgment that TidalHealth violated the False Claims Act, 31 U.S.C. § 3730(h) (2018) and that TidalHealth and John Doe CRA violated the Fair Credit Reporting Act;

b. Reinstatement of Ms. Green to her former position with the same seniority status she would have had but for TidalHealth's unlawful conduct, change in TidalHealth's employment-related policies, or in the alternative, an award of front pay in lieu of reinstatement;

c. Back pay, including lost wages, variable compensation, and the value of lost benefits, from the date of termination through the date of judgment, with prejudgment interest;

d. Two times the amount of back pay, with interest thereon, and special damages sustained as a result of defendant, pursuant to violation of 31 U.S.C. § 3730(h)(2) (2018).

e. Compensatory damages for emotional distress, mental anguish, physical harm, humiliation, and reputational injury;

f. Actual, statutory, and punitive damages under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681n, 1681o (2018), against TidalHealth and John Doe CRA;

g. Punitive damages against TidalHealth for its willful and malicious conduct, in an amount to be determined at trial and subject to applicable statutory limits;

h. (xxx) Ms. Green's reasonable attorneys' fees and costs pursuant to the False Claims Act, 31 U.S.C. § 3730(h)(2) (2018), and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681n, 1681o (2018);

i. Post-judgment interest at the maximum rate allowed by law; and

j. Such other and further relief as this Court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Suzanne Green demands a trial by jury on all issues so triable.

Dated: July 27                    , 2026

Respectfully submitted,

By : _____

**Mohamed Bamba, Esq. (Bar No. 21500)**
Bamba Law, LLC
10015 Old Columbia Road, Suite B-215
Columbia, MD 21046
Tel: (443) 656-8310 | Email:
mohamed@bambalaw.com
*Local Counsel for Plaintiff*

_____

**Zuneera Masood, Esq.**
(Pro Hac Vice Admission Pending)
Masood Law
100 Commerce Drive, Suite 304
Newark, DE 19713
Tel: (302) 387-0797 | Email:
zuneera@masoodlaw.com
Admitted in North Dakota
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this __28th__ day of ___July___, 2026, a true and correct copy of the Plaintiff's Complaint, together with the Summonses issued by the clerk of the court, were sent by electronic mail to Defendant's Counsel, Larry Seegull, Esq., as described below:

Larry Seegull, Esq.
Counsel for Defendant
Larry.Seegull@jacksonlewis.com

Mohamed Bamba, Esq. (Bar No. 21560 )
Bamba Law, LLC
10015 Old Columbia Road, Suite B-215
Columbia, MD 21046
Tel: (443) 656-8310 | Email:
mohamed@bambalaw.com
*Local Counsel for Plaintiff*

Zuneera Masood, Esq.
(Pro Hac Vice Admission Pending)
Masood Law
100 Commerce Drive, Suite 304
Newark, DE 19713
Tel: (302) 387-0797 | Email:
zuneera@masoodlaw.com
Admitted in North Dakota*Counsel for Plaintiff*

22